```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/17/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREW E. LEWIN, individually and as Trustee
of the Regina Gruss Trust f/b/o Andrew Lewin,
CLEMENT LEWIN, as Trustee of the Regina
Gruss Trust f/b/o Andrew Lewin, and MARINA
LEWIN, in their individual capacity and
Derivatively on behalf of Lipper Convertibles, L.P.,

  Plaintiffs,

  -against-                                                      03 Civ. 1117 (RMB)

LIPPER CONVERTIBLES, L.P., LIPPER
HOLDINGS, LLC, LIPPER & COMPANY, L.P.,
KENNETH LIPPER, ABRAHAM BIDERMAN,
and PRICEWATERHOUSECOOPERS LLP,

  Defendants.
------------------------------------------------------------X
CILP ASSOCIATES, L.P. and COHEN POOLED
ASSETS L.P.,

  Plaintiffs,
                                                                 03 Civ. 2632 (RMB)
  -against-
                                                                 **OPINION & ORDER**
LIPPER CONVERTIBLES, L.P., LIPPER
HOLDINGS, LLC, LIPPER & COMPANY, L.P.,
KENNETH LIPPER, ABRAHAM BIDERMAN,
and PRICEWATERHOUSECOOPERS LLP,

  Defendants.
------------------------------------------------------------X

## I.  Introduction

On February 19, 2003, Andrew E. Lewin, Clement Lewin, and Marina Lewin

(collectively, the "Lewins") filed a complaint ("Lewin Complaint") against Lipper Convertibles,

L.P. ("Convertibles" or "Partnership"), a hedge fund; PricewaterhouseCoopers LLP ("PwC"),

Convertibles's auditor; Lipper Holdings, LLC ("Holdings"), Convertibles's general partner;

Lipper & Company, L.P. ("Lipper & Co."); Kenneth Lipper ("Lipper"); and Abraham Biderman ("Biderman"). (See Lewin Compl., dated Feb. 14, 2003; PwC's Rule 56.1 Statement of Undisputed Material Facts, dated May 28, 2010 ("PwC 56.1"), ¶¶ 2–3.) The Lewins assert claims on behalf of Convertibles against PwC for common law malpractice and breach of contract. (See Lewin Compl. ¶¶ 240–52.)[1] The Lewins also assert claims on their own behalf and on behalf of the Regina Gruss Trust f/b/o Andrew Lewin ("Lewin Trust") against PwC for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), based upon a theory of fraud in the inducement, and for common law fraud and negligent misrepresentation. (See Lewin Compl. ¶¶ 147–218.)

On April 15, 2003, CILP Associates, L.P. ("CILP") and Cohen Pooled Assets, L.P. ("Cohen") filed a complaint very similar to the Lewin Complaint ("CILP/Cohen Complaint"), asserting against PwC substantially the same claims as are included in the Lewin Complaint (collectively, as to both complaints, "Derivative Claims" and "Direct Claims").[2] (See CILP/Cohen Compl., dated Apr. 11, 2003, ¶¶ 142–213, 235–47.)[3]

---

[1]  See page 3 below.

[2]  Use of the phrase "Direct Claim" herein is descriptive and is not intended to imply that Plaintiffs have, in fact, demonstrated a direct claim. See pages 3, 4, 11 below.

[3]  By Order, dated July 7, 2003, United States District Judge Richard Owen granted a motion, filed April 30, 2003, by Convertibles, Holdings, Lipper & Co., Lipper, and Biderman (collectively, "Non-PwC Defendants") seeking to compel arbitration as to the claims against them contained in the Lewin Complaint and the CILP/Cohen Complaint. See Levitt v. Lipper Holdings, LLC, Nos. 03 Civ. 266, 03 Civ. 1117, 03 Civ. 1144, 03 Civ. 2632, 2003 WL 21523986 (S.D.N.Y. July 7, 2003). Judge Owen's Order appears not to have been complied with. That is, while in 2004 the Lewins commenced arbitration before the Financial Industry Regulatory Authority, that proceeding "has been placed in inactive status at the request of the parties since 2007." (Pls.' Ltr. to the Ct. in Consultation with Opposing Counsel, dated Nov. 9,

CILP and Cohen, as well as the Lewins and the Lewin Trust (collectively, "Plaintiffs"), who are all limited partners of Convertibles, allege, among other things, that they were induced to invest in Convertibles by annual audits of the Partnership conducted by PwC from 1995 through 2000 ("Annual Reports"), which Annual Reports falsely and misleadingly "bore a[n] unqualified opinion from [PwC] stating that it had audited the financial statements of [Convertibles] in accordance [with generally accepted auditing standards ('GAAS')] and that the statements reflected fairly the financial position of [Convertibles] and the results of its operations in conformity with [generally accepted accounting practices ('GAAP')]." (Lewin Compl. ¶ 39; see CILP/Cohen Compl. ¶ 43; PwC 56.1 ¶ 1.) Plaintiffs seek damages in the amount of $1,661,551 (plus pre-judgment interest), "the difference between the amount they invested in [Convertibles on various dates between 1998 and 2001] . . . and the withdrawals and distributions they received" before and after Convertibles's liquidation.[4] (PwC 56.1 ¶¶ 137–39.)

On or about May 11, 2004, Plaintiffs and PwC agreed to stay the (above detailed) Derivative Claims pending resolution of a liquidation proceeding in New York State Supreme Court. (Pls.' Ltr. to the Ct., dated May 11, 2004, at 1.) The parties have since agreed to the dismissal of such Derivative Claims and "are preparing a formal stipulation to memorialize the dismissal." (Status Ltr. at 1.)

On May 13, 2004, Judge Owen issued rulings on PwC's motions, filed June 9 and 10, 2003, to dismiss the (above detailed) Direct Claims. See Lewin v. Lipper Convertibles, L.P., No.

---

2010 ("Status Ltr."), at 2.) And, CILP and Cohen "did not commence an arbitration proceeding and have no intention of doing so." (Status Ltr. at 2.)

[4] Plaintiffs term this a "rescissionary measure of damages." (Pls.' Mem. of Law in Opp'n to Mot. for Summ. J., dated July 15, 2010 ("Pls. Opp'n" or "Opposition"), at 26); see Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 49 n.21 (2d Cir. 1978) ("[G]ross economic loss on a portfolio-wide basis during a relevant time period is often referred to as a rescission measure of damages.").

3

03 Civ. 1117, 2004 WL 1077930 (S.D.N.Y. May 13, 2004); CILP Assocs. v. Lipper Convertibles, L.P., No. 03 Civ. 2632, 2004 WL 1077991 (S.D.N.Y. May 13, 2004). Judge Owen found, among other things, that the Lewins' and Cohen's allegations of (i) Convertibles's "repeated and pervasive" accounting violations and (ii) PwC's "fail[ure] to check for corroborative support of" Convertibles's securities valuations "support a minimum inference of the requisite conscious misbehavior or recklessness" under Section 10(b) and Rule 10b-5. Lewin, 2004 WL 1077930, at *2; see CILP, 2004 WL 1077991, at *1. Judge Owen dismissed CILP's claims for failure properly to plead "reliance," CILP, 2004 WL 1077991, at *1–2, although CILP subsequently amended its complaint in an effort to cure this pleading deficiency (see CILP/Cohen Am. Compl., dated May 25, 2004 ("CILP/Cohen Amended Complaint").)

On July 19, 2004, PwC filed answers to the Lewin Complaint and the CILP/Cohen Amended Complaint, and asserted cross claims for contribution against the Non-PwC Defendants ("Cross Claims"). (See PwC's Answer & Cross Claims as to Lewin Compl., dated July 16, 2004, ¶¶ 262–324; PwC's Answer & Cross Claims as to CILP/Cohen Am. Compl., dated July 16, 2004, ¶¶ 264–326.)

On February 22, 2008, the case was reassigned to this Court.

On May 29, 2010, PwC moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") as to Plaintiffs' Direct Claims, arguing that: (1) Plaintiffs lack standing because "they have failed to adduce evidence of a non-derivative injury," i.e., the Direct Claims are, in fact, derivative in nature; and, alternatively, (2) Plaintiffs'

4

fraud claims fail because "they have no evidence that PwC acted with scienter."[5] (PwC's Mem. of Law in Supp. of Mot. for Summ. J., dated May 28, 2010 ("PwC Mem."), at 2, 15, 22.)

On July 15, 2010, Plaintiffs filed a brief in opposition, arguing that: (1) Plaintiffs "are the only persons with standing" because they "purchased at inflated prices in reliance upon the misrepresentations that the funds were properly valued, and were injured when the true valuations were revealed"; and (2) "there is well more than sufficient evidence in the record to create a question of fact with respect to whether PwC was reckless in giving clean audit opinions." (Pls. Opp'n at 20, 25–26 (emphasis omitted).)

On July 29, 2010, PwC filed a reply, arguing, among other things, that Plaintiffs, by failing to offer any "competent evidence" to show that they "received less value than they paid for on the dates of their investments," have failed to refute PwC's showing (which relies in part upon expert testimony) that their claimed injury is entirely derivative. (PwC's Reply Mem. in Further Supp. of Mot. for Summ. J., dated July 29, 2010 ("PwC Reply"), at 1, 7 & n.3.)[6]

**For the reasons set forth below, PwC's motion for summary judgment is granted.**

## II. Background

From 1995 until 2002, Convertibles, a New York limited partnership, operated as a hedge fund that engaged in "convertible arbitrage" and "was open only to sophisticated investors meeting certain asset and/or income thresholds."[7] (PwC 56.1 ¶¶ 2–3, 96.) For each fiscal year

---

[5] PwC does not seek summary judgment as to the Derivative Claims because, as noted, these claims have been voluntarily dismissed. (See Status Ltr. at 1); see also page 3 above.

[6] At a conference on May 20, 2010, the parties agreed to resolution of the instant motion "on submission." (Tr. of Proceedings, dated May 20, 2010, at 5:1–7.)

[7] Convertible arbitrage is a complex and sophisticated investment strategy aimed at "capturing the differential between the yield on an issuer's convertible security (for example, convertible debt or convertible preferred stock) and the dividend on its underlying common

between 1995 and 2000, Convertibles retained PwC to perform audits of its year-end financial statements. (See PwC 56.1 ¶ 4.)

On various dates between May 1, 1998 and April 1, 2001, Plaintiffs made investments in Convertibles as limited partners. (See PwC 56.1 ¶¶ 1, 107.) The partnership agreement governing Convertibles, dated July 1, 1993, required Convertibles to "maintain a value of each limited partner's capital contributions," which was "thereafter . . . debited and credited with proportionate shares of [Convertibles's] profits, losses and expenses." (PwC 56.1 ¶¶ 6–7.)

On January 14, 2002, Convertibles' head trader, Edward Strafaci ("Strafaci"), resigned his post, and one month later Holdings informed the limited partners that it would issue new year-end valuations of Convertibles's securities for 2001.[8] (See PwC 56.1 ¶¶ 110–11; Orel Decl., Ex. Z at 1.) On March 26, 2002, Holdings announced plans to liquidate and wind up the Convertibles partnership. (See PwC 56.1 ¶¶ 110–12.) Following liquidation, Convertibles held approximately $362,000,000 for distribution to the limited partners. (See PwC 56.1 ¶ 113.)

On February 13, 2004, in liquidation proceedings in the Supreme Court of the State of New York, New York County ("Supreme Court"), Justice Karla Moskowitz ordered the distribution of Convertibles's liquidation funds in accordance with a plan ("Revised Distribution

---

equity security. This is accomplished by setting up positions which attempt to be neutral as to the direction of the market and the price of the underlying security." (Am. Decl. of Joshua M. Cutler, filed June 9, 2010 ("Cutler Decl."), Ex. 2 at 5; see Lewin Compl. ¶ 16; CILP/Cohen Am. Compl. ¶ 18.)

[8] On August 11, 2004, Strafaci pled guilty before United States District Judge Laura Taylor Swain to securities fraud for "knowingly and willfully . . . ma[king] untrue statements of material fact in connection with the purchase and sales of interests" in Convertibles "[a]t various times" between 1998 and 2002. (Tr. of Strafaci's Guilty Plea, dated Aug. 11, 2004, at 20:2–7, attached as Ex. Y to Decl. of Stephen H. Orel, dated July 15, 2010 ("Orel Decl."); see Orel Decl., Ex. CC at 4–5; Plaintiffs' Counterstatement of Add'l Material Facts, dated July 15, 2010 ("Pls. 56.1"), ¶¶ 5, 8); United States v. Strafaci, No. 03 Cr. 1182 (S.D.N.Y.). On May 23, 2005, Judge Swain sentenced Strafaci to six years in prison and ordered him to pay $89,282,416 in restitution. See Strafaci, No. 03 Cr. 1182.

6

Plan") developed by accounting firm BDO Seidman LLP ("BDO Seidman").[9] (See PwC 56.1 ¶ 125.) The Trustee made distributions to Plaintiffs, among other limited partners, based upon Plaintiffs' June 30, 2002 capital balances, as calculated in the Revised Distribution Plan. (See PwC 56.1 ¶ 145.) The Lewins and the Lewin Trust have received approximately $947,278, and CILP and Cohen have received approximately $5,683,983, in distributions, i.e., collectively, Plaintiffs appear to have received approximately 80 cents on the dollar of their net investments in Convertibles. (See Cutler Decl., Ex. 55 at 5–6; Cutler Decl. Ex. 56 at 6.)

On July 2, 2004, the Trustee commenced an action in the Supreme Court against PwC, asserting (derivative) claims on behalf of Convertibles for negligence, fraud, breach of fiduciary duty, and breach of contract ("Trustee's Action"). (See PwC 56.1 ¶ 127; Cutler Decl., Ex. 70.) The Trustee's Action alleged that PwC's "unqualified audit opinions on [Convertibles's] financial statements" from 1995 through 2000 "were materially false and misleading in that they falsely represented that [PwC] had audited [Convertibles's] financial statements in accordance with GAAS, and that the financial statements were prepared in accordance with GAAP." (Cutler Decl., Ex. 70 ¶ 126; see Lewin Compl. ¶ 39; CILP/Cohen Am. Compl. ¶ 49.) The Trustee's Action sought to recover damages for, among other things, (1) Convertibles's alleged overpayment of management and incentive fees to Holdings, (2) Convertibles's alleged overpayment of funds to withdrawing limited partners, and (3) losses incurred as a result of liquidating Convertibles's securities holdings at deflated prices. (See PwC 56.1 ¶ 128.) Following "comprehensive and meaningful discovery," as well as multiple "hard-fought" motions and appeals, PwC settled the Trustee's Action for $29,978,000. (See PwC 56.1 ¶ 133.)

---

[9] Justice Moskowitz also authorized Convertibles's liquidating trustee ("Trustee") to pursue any claims Convertibles may have had against its managers and third parties. (See PwC 56.1 ¶¶ 120, 126.)

7

By Order, dated November 3, 2010, Justice Shirley Werner Kornreich approved the settlement as "in all respects, fair, reasonable and adequate," and ordered that it not be "offered or received as evidence of a presumption, concession or admission of any fault, misrepresentation or omission in any statement or written document approved or made by PwC." Williamson v. PricewaterhouseCoopers, LLP, Index Nos. 602106/04, 604396/02, at 7, 8, 10, 13 (N.Y. Sup. Ct. Nov. 3, 2010). Plaintiffs opted out of (and have not participated in) the settlement "because to do so would have required them to release the claims they have asserted against PwC in these lawsuits." (Pls. Opp'n at 27.)

On November 7, 2007, in an action strikingly similar to the case at bar and brought against PwC in the Supreme Court by Convertibles limited partners (other than Plaintiffs), Justice Moskowitz granted PwC's motion for summary judgment. See Continental Cas. Co. v. PricewaterhouseCoopers, LLP, Index Nos. 120016/2003, 121132/2003, 602962/2003, N.Y. Slip Op. 33619U, 2007 WL 3992606, at 2, 5–6 (N.Y. Sup. Ct. Nov. 7, 2007) ("[D]iscovery is now closed and plaintiffs fail to produce any evidence to support their claim that they suffered a direct injury at the time of their investments that is distinct from the injury to [Convertibles]. . . . [T]he nature of the injury is derivative."). On December 30, 2008, the Supreme Court, Appellate Division, affirmed the grant of summary judgment for PwC. See Continental Cas. Co. v. PricewaterhouseCoopers, LLP, 869 N.Y.S.2d 506, 507 (N.Y. App. Div. 2008) ("Even if plaintiff limited partners' claims of fraudulent inducement are sufficient, as a legal matter, to support a direct claim against [Convertibles's] auditor, they failed to submit evidence to raise an issue of fact in opposition to [PwC's] prima facie showing that the damages claimed all emanated from losses that took place after the initial investment, did not affect plaintiffs differently from other limited partners, and were therefore derivative." (internal citations omitted)). And, on June 29,

2010, the New York State Court of Appeals ("Court of Appeals") held that PwC was entitled to summary judgment and dismissed the limited partners' claims as "derivative in nature." Continental Cas. Co. v. PricewaterhouseCoopers, LLP, 933 N.E.2d 738, 742–43 (N.Y. 2010). "The only injury [the plaintiffs sought] to establish [wa]s the diminution in value of their limited partnership interests at liquidation," which was "attributable to [the plaintiffs'] pro rata share of the partnership's losses" and was "experienced . . . in [the plaintiffs'] capacities as limited partners in common with all other limited partners." Id.

Assuming, without deciding, that the plaintiffs in Continental had properly alleged a claim of fraud in the inducement, the Court of Appeals went on to say that in the presence of the overlapping claims brought in the Trustee's Action "seeking the very same categories of damages," the plaintiffs were required – but failed – "to come forward with direct, distinct date-of-investment injuries" to support such a claim, i.e., "portfolio valuations showing the amount of the claimed overvaluation of the portfolio on the day of their respective investments." Id. at 740 n.*, 742.[10]

### III.  Legal Standard

"Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law." In re IBM Corp. Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)). "When a motion for summary judgment is made, 'an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" In re Ivan F. Boesky Sec. Litig., 36 F.3d 255, 265–66 (2d Cir. 1994)

---

[10]  As discussed at pages 13–20 below, this Court finds the logic and reasoning of the New York Court of Appeals in Continental to be very helpful in resolving the instant motion.

(quoting Fed. R. Civ. P. 56(e)) (alteration in original). "In looking at the record, [the Court] construe[s] the evidence in the light most favorable to the nonmoving party and draw[s] all inferences and resolve[s] all ambiguities in favor of the nonmoving party." In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 509 (2d Cir. 2010) (internal quotation marks and alterations omitted).

Where plaintiffs complain of injuries that are wholly derivative of harm to a third party, plaintiffs' injuries are generally deemed indirect and as a consequence too remote to support recovery. See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 236 (2d Cir. 1999) (citing Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268–69 (1992)). "A shareholder lacks standing to sue for injury to the corporation, for the shareholder suffers only derivatively, i.e., the decrease in the value of his investment. The same principle applies to limited partners." Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 91 Civ. 2050, 1993 WL 410503, at *1 (S.D.N.Y. Oct. 14, 1993) (citing Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.1986); Attick v. Valeria Assocs., No. 91 Civ. 3758, 1992 WL 58868, at *4 (S.D.N.Y. Mar. 19, 1992)). "Moreover, when the plaintiffs' standing has been challenged on a motion for summary judgment the plaintiffs must come forward with sufficient evidence to show that there is a genuine material issue as to their standing to warrant a trial." Amnesty Int'l USA v. McConnell, 646 F. Supp. 2d 633, 641 n.10 (S.D.N.Y. 2009).

"In a fraud action, a plaintiff may recover only the actual pecuniary loss sustained as a direct result of the wrong," i.e., "the difference between the value of the bargain which a plaintiff was induced by the fraud to make and the amount or value of the consideration exacted as the price of the bargain." Continental, 933 N.E.2d at 742 (internal quotation marks omitted); see Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 614 (2d Cir. 1994); In re Exec.

Telecard, Ltd. Sec. Litig., 979 F. Supp. 1021, 1025 (S.D.N.Y. 1997). "[I]n order to establish the existence of damages and defeat summary judgment, [the non-moving party] must come forward with evidence sufficient to demonstrate with reasonable certainty" their existence. Upper Deck Co., LLC v. BreaKey Int'l, BV, 390 F. Supp. 2d 355, 358 (S.D.N.Y. 2005); W.S.A., Inc. v. ACA Corp., Nos. 94 Civ. 1493/1868, 1998 WL 635536, at *6 (S.D.N.Y. 1998). "[R]escission is often disfavored as a Rule 10b-5 remedy." JSMS Rural LP v. GMG Capital Partners III, LP, No. 04 Civ. 8591, 2006 WL 1867482, at *4 (S.D.N.Y. July 6, 2006); see Mathews v. Kidder, Peabody & Co., 260 F.3d 239, 250 (3d Cir. 2001) ("[I]n most [Section] 10(b) cases, we are extremely hesitant to award rescissionary damages and instead apply an 'out of pocket measure.'").

The "scienter" element of a claim under Section 10(b) and Rule 10b-5 "can be satisfied by a strong showing of reckless disregard for the truth." S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109 (2d Cir. 2009); see Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000); In re Winstar Commc'ns Sec. Litig., No. 01 Civ. 11522, 2010 WL 3910322, at *3–5 (S.D.N.Y. Sept. 29, 2010). But, when a motion for summary judgment "must be sustained because of plaintiffs' lack of standing, there is no need to discuss the[] other issues." Ass'n of Immigration Attorneys v. INS, 675 F. Supp. 781, 785 (S.D.N.Y. 1987).

"Because the elements of common law fraud in New York are 'substantially identical to those governing [Section] 10(b), the identical analysis applies.'" San Diego Cnty. Emps. Ret. Ass'n v. Maounis, No. 07 Civ. 2618, 2010 WL 1010012, at *17 (S.D.N.Y. Mar. 15, 2010) (quoting Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991)).

**IV.  Analysis**

PwC argues, among other things, that Plaintiffs lack standing to pursue the Direct Claims because they have failed "to present evidence of a direct injury distinct from that suffered, and

11

settled," by Convertibles. (PwC Mem. at 2.) PwC argues also that the measure of damages that is available for Plaintiffs' alleged fraud in the inducement claims is "the difference between the fair value of all that [P]laintiffs received and the fair value of what [they] would have received had there been no fraudulent conduct," and that Plaintiffs have presented "no evidence that they suffered any such date of investment injury." (PwC Reply at 9 (quoting Randall v. Loftsgaarden, 478 U.S. 647, 661–62 (1986))); see Continental, 933 N.E.2d at 742. Plaintiffs counter, among other things, that they have standing because "[o]verwhelming evidence supports th[e] conclusion" that they suffered a direct injury and that "the price [P]laintiffs paid for their investments in . . . Convertibles was fraudulently inflated at the time of purchase." (Pls. Opp'n at 25–26.) Plaintiffs also counter that their (alternative) "rescissionary measure of damages is simply one classic measure of damages that courts have repeatedly have [sic] held to be appropriate in 10b-5 cases." (Pls. Opp'n at 26 (emphasis omitted).)

PwC has presented the expert testimony of an economist, Dr. Chudozie Okongwu, principally to support the contention that Plaintiffs' losses are derivative.[11] (See Okongwu Aff. ¶ 4). Dr. Okongwu opines that Plaintiffs' asserted damages – calculated as the difference between Plaintiffs' net capital investments and their June 30, 2002 capital balances – "are exclusively a function of three components, each of which accrued to Plaintiffs in common with the other limited partners . . . and none of which is unique to Plaintiffs or accrued at the moment

---

[11] Dr. Okongwu is a senior vice president of NERA Economic Consulting, where he "[d]irects projects that apply financial economics to consulting and to securities-related litigation." (Aff. of Chudozie Okongwu, dated May 28, 2010 ("Okongwu Aff."), Ex. 1 at 2.) He holds a Ph.D. in Economics from the University of California, Berkeley, and a Bachelor of Science degree in Economics from the Massachusetts Institute of Technology. (See Okongwu Aff. ¶¶ 2–3.)

of Plaintiffs' investment[s]." (Okongwu Aff. ¶ 4(5).)[12] Dr. Okongwu concludes that each of the components reflects Plaintiffs' allocations of Convertibles's losses "on a pro rata basis in accordance with [Plaintiffs'] As Adjusted capital ownership percentages." (Okongwu Aff. ¶ 4.)

Plaintiffs have not proffered any expert evidence to rebut PwC's (or Dr. Okongwu's) assessment. (See PwC ¶ 141.) Nor have Plaintiffs presented any evidence of the alleged "true valuations" of their investments on the dates of purchase nor of the difference between those valuations and the prices Plaintiffs paid. (Pls. Opp'n at 26.) Plaintiffs rely instead (and unpersuasively) upon the conclusory assertion that investors in limited partnerships are "injured when they purchase[] at inflated prices." (Pls. Opp'n at 26); see BRS Assocs. v. Dansker, 246 B.R. 755, 772 (S.D.N.Y. 2000).

**Standing**

"[T]he general rule, applicable in New York and elsewhere, [is] that where an injury is suffered by a corporation and the shareholders suffer solely through depreciation in the value of their stock, only the corporation itself . . . or a stockholder suing derivatively in the name of the corporation may maintain an action against the wrongdoer." Vincel v. White Motor Corp., 521 F.2d 1113, 1118 (2d Cir. 1975); see Rand, 794 F.2d at 849; Perlman v. Salomon Inc., No. 92 Civ. 5208, 1995 WL 110076, at *3 (S.D.N.Y. Mar. 14, 1995). "Analogous rules distinguish between direct and derivative actions in the limited partnership context."[13] Dansker, 246 B.R. at

---

[12]   According to Dr. Okongwu, these three components are (1) Convertibles' "net [trading] . . . loss," (2) "overwithdrawals" from Convertibles by withdrawing limited partners, and (3) "overwithdrawals" from Convertibles by Holdings. (Okongwu Aff. ¶¶ 4(5)(a)–(c), 8; see PwC Mem. at 24.)

[13]   Although "the [C]ourt looks to federal rather than state law" "to determine whether a party has standing to raise a claim under Section 10(b)," Farey-Jones v. Buckingham, 132 F. Supp. 2d 92, 99 (E.D.N.Y. 2001) (internal quotation marks omitted) (citing Drachman v. Harvey, 453 F.2d 722, 727 (2d Cir. 1971)), "the result is the same" because New York law "is

772 (citing Lenz v. Associated Inns & Restaurants Co. of Am., 833 F. Supp. 362, 380 n.18 (S.D.N.Y. 1993)); see Dayton, 1993 WL 410503, at *1; Continental, 933 N.E.2d at 741–42. "Since the[se] elements of standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Adelphia Recovery Trust v. Bank of Am., N.A., No. 05 Civ. 9050, 2010 WL 2077214, at *4 (S.D.N.Y. May 14, 2010) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

Plaintiffs have failed to establish standing because the evidence presented shows that, although their claims are denominated as direct, Plaintiffs have, in fact, suffered "only through diminution in the value of their share[]" in Convertibles, rather than "separately and distinctly from" the Partnership. Dall. Cowboys Football Club, Ltd. v. Nat'l Football League Trust, No 95 Civ. 9426, 1996 WL 601705, at *2 (S.D.N.Y. Oct. 18, 1996) (internal quotation marks omitted); see Vincel, 521 F.2d at 1118. "It is a well-settled rule of law that even in cases of alleged corporate fraud, a decrease in the value of stock in and of itself is not an injury which confers standing to sue upon an individual stockholder." Perlman, 1995 WL 110076, at *3 (collecting cases). And, Plaintiffs' conclusory assertions – unsupported by expert opinion or other proof of damages – that the prices they paid to become limited partners in Convertibles were "fraudulently inflated at the time of purchase" is, standing alone, insufficient. (Pls. Opp'n at 25, 30.) Accordingly, Plaintiffs have not met their burden upon summary judgment of showing that

---

consistent with the general common law rule" applied under federal law, Ceribelli v. Elghanayan, 990 F.2d 62, 63–64 (2d Cir. 1993) (citing Warren v. Mfrs. Nat'l Bank of Detroit, 759 F.2d 542, 545 (6th Cir. 1985)).

14

they have "a direct, personal interest in [the] cause of action to bring suit . . . ." (Pls. Opp'n at 25 (quoting Franchise Tax Bd. of Cal. v. Alcan Aluminium Corp., 493 U.S. 331, 336 (1990)).)

PwC, as the moving party, has with the help of expert testimony met its initial burden of demonstrating the absence of a genuine issue of material fact as to the existence of a direct – as opposed to derivative – injury. (See Okongwu Aff. ¶¶ 4, 8); FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). By contrast, Plaintiffs, as the party opposing summary judgment, have not met their affirmative duty to direct the court's attention to those specific portions of the record on which they rely to create a genuine issue of material fact. See FDIC, 607 F.3d at 292; Duch v. Jakubek, 588 F.3d 757, 764 n.2 (2d Cir. 2009); 5 Moore's Federal Practice § 56.13[4]; Fed. R. Civ. P. 56(e); Local Civ. R. 56.1(d). That is, Plaintiffs have not presented any evidence to counter PwC's evidence that Plaintiffs' alleged losses "accrued to Plaintiffs in common with the other limited partners," are not "unique to Plaintiffs," and did not "accrue[] at the moment of Plaintiffs' investment[s]." (Okongwu Aff. ¶ 4(5)); see Chow v. Stride Rite Corp., No 05 Civ. 2417, 2009 WL 196030, at *2 n.2 (S.D.N.Y. Jan. 27, 2009); Alliance Sec. Prods., Inc. v. Fleming Co., 471 F. Supp. 2d 452, 453 (S.D.N.Y. 2007); Rodriguez v. Schneider, No 95-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999). And, while Plaintiffs may disagree with Dr. Okongwu's conclusions (see Pls. Opp'n at 27–29), they "cannot proceed to trial by simply denying that [his] opinions are correct" (PwC Reply at 10); see Boesky, 36 F.3d at 265–66; Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.3d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").

Plaintiffs refer in their Opposition to the BDO Seidman reports, presumably for the proposition that those reports establish that Plaintiffs "purchased at inflated prices" and, thus, were "injured when the true valuations were revealed." (Pls. Opp'n at 26.) But, as PwC

15

correctly observes, "Plaintiffs fail to point to anything in the BDO Seidman reports that demonstrates that [P]laintiffs received less value [on the dates of their investments] than they paid for." (PwC Reply at 7 n.3); see Duch, 588 F.3d at 764 n.2 ("[T]he critical point . . . is that [the non-moving party] has not presented any evidence contradicting the evidence put forth by defendants." (emphasis omitted) (citing Fed. R. Civ. P. 56(e)(2))); Fernandez v. DeLeno, 71 F. Supp. 2d 224, 227–28 (S.D.N.Y. 1999). Indeed, BDO Seidman expressly state that they were "not . . . asked to develop an opinion regarding whether the values of the securities contemporaneously reported [by Convertibles] were appropriate at any specific point in time" (and Plaintiffs point out that the Revised Distribution Plan assumes no such inflated "mispricing of Convertibles in the first place"). (Cutler Decl., Ex. 61 at 1; Pls. 56.1 ¶ 146.) The Court is left "to scour the record on its own in a search for evidence" of proof of the alleged direct injury. Archie Comic Publ'ns, Inc. v. DeCarlo, 258 F. Supp. 2d 315, 317 (S.D.N.Y. 2003) (quoting Rodriguez, 1999 WL 459813, at *1 n.3); Fernandez, 71 F. Supp. 2d at 227–28. "This response is utterly insufficient." Archie, 258 F. Supp. 2d at 318; Continental, 933 N.E.2d at 741 ("[The] plaintiffs could not come forward with proof that they suffered an injury distinct from that suffered by [Convertibles].").[14]

"[A] defrauded buyer of securities is entitled [under Section 10(b)] to recover only the excess of what he paid over the value of what he got." Milken, 17 F.3d at 614 (quoting Levine v. Seilon, Inc., 439 F.2d 328, 334 (2d Cir. 1971)); Exec. Telecard, 979 F. Supp. at 1025. But, as noted, Plaintiffs have not presented any evidence of the alleged actual value of their investments

---

[14] Because Plaintiffs have not established direct injury distinct from Convertibles, the Court need not address PwC's claim that "Plaintiffs are unable to demonstrate a triable fact issue as to whether PwC acted with the requisite scienter" under Section 10(b) and Rule 10b-5. (PwC Mem. at 13); see Ginett v. Computer Task Grp., Inc., No 89 Civ. 1602, 1991 WL 5133, at *3 (W.D.N.Y. Jan. 15, 1991); Immigration Attorneys, 675 F. Supp. at 785.

at the time Plaintiffs invested or the difference between that value and the prices they paid. "Because [Plaintiffs] have not provided this Court with **any** evidence as to what their true damages are . . . , [PwC is] entitled to summary judgment as to [the Section 10(b) and Rule 10b-5 fraud in the inducement] claim." Gordon Partners v. Blumenthal, No. 02 Civ. 7377, 2007 WL 1438753, at *2 (S.D.N.Y. May 16, 2007) (emphasis in original) (internal quotation marks omitted), aff'd, 293 F. App'x 815 (2d Cir. 2008); see JSMS, 2006 WL 1867482, at *4, aff'd on reconsideration, 2006 WL 2239681 (S.D.N.Y. Aug. 4, 2006); In re Imperial Credit Indus., Inc. Sec. Litig., 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003), aff'd, 145 F. App'x 218 (9th Cir. 2005); Carpe v. Aquila, Inc., No. 02 Civ. 388, 2005 WL 1138833, at *8 (W.D. Mo. 2005) ("In a Section 10(b) and Rule 10b-5 case, expert testimony is required in order for plaintiff[] to meet [its] burden of proof in establishing the fact of damages and the means of calculation of same." (citing In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 744 (S.D.N.Y. 1985))); Continental, 933 N.E.2d at 742.[15]

Plaintiffs are no more persuasive in contending that courts have "repeatedly" accepted a rescissionary measure of damages in Federal securities cases. (Pls. Opp'n at 26.) For one thing, "rescission is often disfavored as a Rule 10b-5 remedy." JSMS, 2006 WL 1867482, at *4. In fact, "[c]ourts in this circuit generally have reserved . . . rescission damages . . . for broker-fraud cases" – as opposed to "Rule 10b-5 market fraud" cases – and have "require[d] proof that the purchasers would not have purchased the stock at any price." Koenig v. Smith, 88 F.R.D. 604, 608 (E.D.N.Y.1980) (citing Clark v. John Lamula Investors, Inc., 583 F.2d 594, 603 (2d Cir. 1978); Rolf, 570 F.2d at 49 & n.21; Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1173 (2d

---

[15] The plaintiffs' expert in Continental conceded that an analysis of the Convertibles limited partners' date-of-investment injuries "could be undertaken, but he failed to do one." 933 N.E.2d at 742.

17

Cir. 1970)); see Continental, 933 N.E.2d at 742 ("The damages are to compensate plaintiffs for what they lost because of the fraud, not for what they might have gained." (internal citation omitted)).

And, "[r]egardless of whether rescission might be an appropriate remedy in this case, [P]laintiff[s] must still prove all elements of [their] Rule 10b-5 claim, including that [they] suffered" a (direct) economic loss. JSMS, 2006 WL 1867482, at *4. As noted, the plaintiffs' expert in Continental acknowledged that he could have undertaken an analysis of the limited partners' date-of-investment injuries, "but he failed to do one." 933 N.E.2d at 742 (rescissionary damages are "an exception to the general rule" and have been found proper only when out-of-pocket losses "[can]not be determined and would [leave] the plaintiff without any remedy" (citing Hotaling v. Leach & Co., 159 N.E. 870, 872 (N.Y. 1928))).

In sum, Plaintiffs have failed to establish either "the fact of damages [or] the means of calculation of same." Carpe, 2005 WL 1138833, at *8; Warner, 618 F. Supp. at 744 ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages" under the "'out-of-pocket' damage measure" the "Second Circuit employs . . . in Rule 10b5 cases.").[16]

---

[16] The Trustee's Action against PwC supports the conclusions reached above. See Continental, 933 N.E.2d at 742 ("The presence of the overlapping [Trustee's Action] claims requires plaintiffs to come forward with direct, distinct date-of-investment injuries."); Gordon v. Fundamental Investors, Inc., 362 F. Supp. 41, 46–48 (S.D.N.Y. 1973). Holding Plaintiffs' claim "to be solely that of the [partnership] . . . commends itself to fairness and common sense," as well as "practical and equitable considerations." Id. at 48; see Manson v. Stacescu, 11 F.3d 1127, 1132 (2d Cir. 1993) (shareholder standing requirement "serves the interests of judicial economy by allowing the courts to determine in a derivative action one damage award that will restore the corporation and, therefore, its shareholders, creditors, and employees," and also "prevents some claimants from diverting the corporation's assets from other[s] whose claims have priority" (citing Holmes, 503 U.S. at 269 ("[R]ecognizing claims of the indirectly injured would force courts to adopt the complicated rules of apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple

**State Law Claims**

The Court of Appeals's decision in Continental also supports summary judgment for PwC as to Plaintiffs' state law fraud and negligent misrepresentation claims. See 933 N.E.2d 738; Adelphia, 2010 WL 2077214, at *2 ("[F]or a state law question – such as the question of shareholder standing – the holdings of the state's highest court presumptively control."); In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) ("In considering claims based in New York law (as here)" "th[e] Court affords the greatest weight to decisions of the New York Court of Appeals." (internal quotation marks omitted)).

Although Plaintiffs contend that the factual arguments presented here were not before the Court of Appeals (see Pls. Opp'n at 29), the Continental plaintiffs did raise arguments similar to those that Plaintiffs raise here, namely, that: (1) the Revised Distribution Plan was not "intended to be a damages analysis that described the actual losses suffered by the plaintiffs"; (2) "there is no dispute that . . . Convertibles was overvalued at the time of the plaintiffs' investments"; and (3) "the Trustee is simply not pursuing the same . . . quantum of damages as the plaintiffs" (Br. for Pls.-Appellants before Ct. of Appeals in Continental, dated Dec. 23, 2009, at 29, 30, 59 (emphasis omitted), attached as Ex. B to Decl. of Kristen R. Fournier, dated July 29, 2010; compare Pls. Opp'n at 25, 27, 28–29.) The Court of Appeals was unpersuaded, and determined that the plaintiffs failed to prove losses apart from those suffered "in their capacities as limited partners in common with all other limited partners," and failed to prove "date-of-investment injuries." Continental, 933 N.E.2d at 743. "[B]earing in mind that the highest court of a state has the final word on the meaning of state law," and that the Court of Appeals in Continental dismissed similar claims on a similar record, the Court will dismiss Plaintiffs' state law claims.

---

recoveries.")))); Rand, 794 F.2d at 849; Jackson Nat'l Life Ins. Co. v. Ligator, 949 F. Supp. 200, 207 (S.D.N.Y. 1996).

19

Hamilton v. Beretta U.S.A. Corp., 264 F.3d 21, 29 (2d Cir. 2001) (internal quotation marks omitted); see Continental, 933 N.E.2d 738.

## V.     Conclusion

For the foregoing reasons, PwC's motion for summary judgment [## 56, 65] is granted. The Clerk of the Court is respectfully requested to close the above-captioned cases.[17]

Dated: New York, New York
       November 17, 2010

*RMB*

RICHARD M. BERMAN, U.S.D.J.

---

[17] The claims dismissed in this Opinion are the only active remaining claims in these actions. As noted, Plaintiffs' Derivative Claims have been dismissed voluntarily; Plaintiffs' claims against the Non-PwC Defendants have apparently been abandoned in the face of Judge Owen's July 7, 2003 Order; and PwC's Cross Claims are moot as a result of this ruling. (See Status Ltr. at 1–2); see also pages 2 n.3, 3 above.